**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

### No. 19-1685

AMY BRYANT, M.D., On behalf of herself and her patients seeking abortions; BEVERLY GRAY, M.D., On behalf of herself and her patients seeking abortions; ELIZABETH DEANS, M.D., On behalf of herself and her patients seeking abortions; PLANNED PARENTHOOD SOUTH ATLANTIC, On behalf of itself, its staff, and its patients seeking abortions,

Plaintiffs – Appellees,

v.

JIM WOODALL, In his official capacity as District Attorney ("DA") for Prosecutorial District ("PD") 15B; SATANA DEBERRY, In her official capacity as DA for PD 16; ELEANOR E. GREENE, In her official capacity as President of the North Carolina Medical Board; MANDY K. COHEN, In her official capacity as Secretary of the North Carolina Department of Health and Human Services; and their employees, agents, and successors,

Defendants – Appellants.

------------------------------

STATE OF WEST VIRGINIA; STATE OF ALABAMA; STATE OF ALASKA; STATE OF ARIZONA; STATE OF ARKANSAS; STATE OF INDIANA; STATE OF KANSAS; STATE OF KENTUCKY, by and through Governor Matthew G. Bevin; STATE OF LOUISIANA; STATE OF MISSOURI; STATE OF MONTANA; STATE OF NEBRASKA; STATE OF NORTH DAKOTA; STATE OF OHIO; STATE OF OKLAHOMA; STATE OF SOUTH CAROLINA; STATE OF TEXAS; STATE OF UTAH; GOVERNOR PHIL BRYANT, of the State of Mississippi; THE NATIONAL CATHOLIC BIOETHICS CENTER; AMERICAN ASSOCIATION OF PRO-LIFE OBSTETRICIANS AND GYNECOLOGISTS; CHRISTIAN MEDICAL & DENTAL ASSOCIATIONS; AMERICAN COLLEGE OF PEDIATRICIANS,

Amici Supporting Appellant.

LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW,

Amicus Supporting Appellee.

―――――――

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro. William L. Osteen, Jr., District Judge. (1:16-cv-01368-WO-LPA)

―――――――

Argued: May 6, 2021                              Decided: June 16, 2021

―――――――

Before MOTZ, DIAZ, and RICHARDSON, Circuit Judges.

―――――――

Affirmed by published opinion. Judge Motz wrote the opinion, in which Judge Diaz and Judge Richardson joined.

―――――――

**ARGUED:** Michael T. Wood, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellants. Genevieve Elizabeth Scott, CENTER FOR REPRODUCTIVE RIGHTS, New York, New York, for Appellees. **ON BRIEF:** I. Faison Hicks, Special Deputy Attorney General, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellants. Andrew Beck, AMERICAN CIVIL LIBERTIES UNION FOUNDATION, New York, New York, for Appellees. Beverly Gray, M.D., and Elizabeth Deans, M.D. Julie Rikelman, Caroline Sacerdote, CENTER FOR REPRODUCTIVE RIGHTS, New York, New York, for Appellee Amy Bryant, M.D., M.S.C.R. Maithreyi Ratakonda, New York, New York, Carrie Y. Flaxman, PLANNED PARENTHOOD FEDERATION OF AMERICA, Washington, D.C., for Appellee Planned Parenthood South Atlantic. Irena Como, ACLU OF NORTH CAROLINA, Raleigh, North Carolina, for Appellees. Kevin H. Theriot, ALLIANCE DEFENDING FREEDOM, Scottsdale, Arizona, for Amici The National Catholic Bioethics Center, Christian Medical & Dental Associations, American Association of Pro-Life Obstetricians & Gynecologists, and American College of Pediatricians. Patrick Morrisey, Attorney General, Lindsay S. See, Solicitor General, Thomas T. Lampman, Assistant Solicitor General, OFFICE OF THE ATTORNEY GENERAL OF WEST VIRGINIA, Charleston, West Virginia, for Amicus State of West Virginia. Steve Marshall, Attorney General, OFFICE OF THE ATTORNEY GENERAL OF ALABAMA, Montgomery, Alabama, for Amicus State of Alabama. Kevin Clarkson, Attorney General, OFFICE OF THE ATTORNEY GENERAL OF ALASKA, Anchorage, Alaska, for Amicus State of Alaska. Mark Brnovich, Attorney General, OFFICE OF THE ATTORNEY GENERAL OF ARIZONA, Phoenix, Arizona, for Amicus State of Arizona. Leslie Rutledge, Attorney General, OFFICE OF THE

ATTORNEY GENERAL OF ARKANSAS, Little Rock, Arkansas, for Amicus State of Arkansas.  Curtis T. Hill, Attorney General, OFFICE OF THE ATTORNEY GENERAL OF INDIANA, Indianapolis, Indiana, for Amicus State of Indiana.  Derek Schmidt, Attorney General, OFFICE OF THE ATTORNEY GENERAL OF KANSAS, Topeka, Kansas, for Amicus State of Kansas.  Matthew G. Bevin, Governor, OFFICE OF THE GOVERNOR, Frankfort, Kentucky, for Amicus Commonwealth of Kentucky.  Jeff Landry, Attorney General, OFFICE OF THE ATTORNEY GENERAL OF LOUISIANA, Baton Rouge, Louisiana, for Amicus State of Louisiana.  Phil Bryant, Governor, OFFICE OF THE GOVERNOR, Jackson, Mississippi, for Amicus State of Mississippi.  Eric Schmitt, Attorney General, OFFICE OF THE ATTORNEY GENERAL OF MISSOURI, Jefferson City, Missouri, for Amicus State of Missouri.  Tim Fox, Attorney General, OFFICE OF THE ATTORNEY GENERAL OF MONTANA, Helena, Montana, for Amicus State of Montana.  Doug Peterson, Attorney General, OFFICE OF THE ATTORNEY GENERAL OF NEBRASKA, Lincoln, Nebraska, for Amicus State of Nebraska.  Wayne Stenehjem, Attorney General, OFFICE OF THE ATTORNEY GENERAL OF NORTH DAKOTA, Bismarck, North Dakota, for Amicus State of North Dakota.  Dave Yost, Attorney General, OFFICE OF THE ATTORNEY GENERAL OF OHIO, Columbus, Ohio, for Amicus State of Ohio.  Mike Hunter, Attorney General, OFFICE OF THE ATTORNEY GENERAL OF OKLAHOMA, Oklahoma City, Oklahoma, for Amicus State of Oklahoma.  Alan Wilson, Attorney General, OFFICE OF THE ATTORNEY GENERAL OF SOUTH CAROLINA, Columbia, South Carolina, for Amicus State of South Carolina.  Ken Paxton, Attorney General, OFFICE OF THE ATTORNEY GENERAL OF TEXAS, Austin, Texas, for Amicus State of Texas.  Sean Reyes, Attorney General, OFFICE OF THE ATTORNEY GENERAL OF UTAH, Salt Lake City, Utah, for Amicus State of Utah.  Jon Greenbaum, Kristen Clarke, Dariely Rodriguez, Edward Caspar, LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW, Washington, D.C., for Amicus Lawyers' Committee for Civil Rights Under Law.

————————————————

DIANA GRIBBON MOTZ, Circuit Judge:

North Carolina abortion providers ("the Providers") brought this action to challenge as unconstitutional the State's criminalization of previability abortions. The State officials responsible for enforcement of the challenged statutes, N.C. Gen. Stat. § 14-44 and § 14-45, and the exceptions thereto, § 14-45.1(a)–(b), do not defend the constitutionality of these provisions on appeal. Rather, the State's sole contention is that the Providers do not have standing to bring this suit because they do not face a credible threat of prosecution for violation of the challenged provisions. Like the district court, we disagree. Accordingly, we affirm the judgment of the district court.

I.

North Carolina criminalizes the procurement or administration of abortion as a felony, and has done so for the past 140 years. N.C. Gen. Stat. §§ 14-44, 14-45; 1881 N.C. Sess. Laws 584. In 1967, the State enacted an exception to the abortion ban to permit abortions performed in the case of a medical emergency. 1967 N.C. Sess. Laws 394; *see also* N.C. Gen. Stat. § 14-45.1(b). Following the Supreme Court's 1973 decision in *Roe v. Wade*, 410 U.S. 113, the State enacted another exception to its abortion ban to permit abortions performed before the twentieth week of pregnancy. 1973 N.C. Sess. Laws 1057–58; *see also* N.C. Gen. Stat. § 14-45.1(a).

In 2015, the North Carolina legislature amended both the twenty-week exception, codified at § 14-45.1(a), and the medical emergency exception, codified at § 14-45.1(b). 2015 N.C. Sess. Laws 135 ("2015 amendments"). The 2015 amendments modify § 14-

4

45.1(a) to restrict the type of doctors permitted to perform abortions "during the first 20 weeks of a woman's pregnancy" to "qualified physician[s]," which the amendments define. *Id.* at 143.

The amendments to § 14-45.1(b) narrow the definition of a "medical emergency." *Id.* Prior to the amendments, the State permitted abortions where there was a "substantial risk that the continuance of the pregnancy would threaten the life or gravely impair the health of the woman." *Id.* The amended version of the statute permits an abortion only where one is "necess[ary] . . . to avert [the pregnant woman's] death or for which a delay will create serious risk of substantial and irreversible physical impairment of a major bodily function, not including any psychological or emotional conditions." N.C. Gen. Stat. § 90-21.81(5); *see id.* at § 14-45.1(b). The revised medical emergency exception does not permit an abortion based upon "a claim or diagnosis that the woman will engage in conduct which would result in her death or in substantial and irreversible physical impairment of a major bodily function." *Id.* at § 90-21.81(5).

The 2015 amendments also extend from 24 to 72 hours the waiting period women must observe before obtaining an abortion. The 2015 amendments further include a new requirement that the Department of Health and Human Services ("the Department") annually inspect abortion clinics, and a mandate that abortion providers record and report to the Department certain information, including fetal measurements and ultrasound images. 2015 N.C. Sess. Laws 143–44.

North Carolina has not prosecuted any abortion providers under § 14-44 or § 14-45 since the 1973 amendments.

5

In 2016, the Providers brought suit on behalf of themselves and their patients against the State officials responsible for enforcing the challenged statutes ("the State"). The Providers challenge "the statutes criminalizing abortion, N.C. Gen. Stat. §§ 14-44 and 14-45, and the exceptions, § 14-45.1(a)–(b)," as violative of their patients' Fourteenth Amendment due process rights. The Providers moved for summary judgment, and the district court ordered supplemental briefing to address the Providers' standing in light of North Carolina's failure to prosecute pursuant to the challenged statutes.

Upon receipt of this briefing, in a careful opinion, the district court held that the Providers had established a credible threat of prosecution sufficient to confer standing. *Bryant v. Woodall*, 363 F. Supp. 3d 611, 617–627 (M.D.N.C. 2019). Then, finding that the challenged statutes and exceptions prohibit some previability abortions in violation of the requirements of *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833, 872–74 (1992), the district court awarded summary judgment to the Providers and enjoined the State from enforcing N.C. Gen. Stat. § 14–45.1(a) as applied to previability abortions. *Bryant*, 363 F. Supp. 3d at 627–31.

The State appeals, challenging only the Providers' standing.

II.

We review *de novo* a district court's ruling that a party possesses standing. *Hill v. Coggins*, 867 F.3d 499, 505 (4th Cir. 2017).

To establish Article III standing, "the party invoking federal jurisdiction" must demonstrate that it has (1) suffered an injury in fact, (2) that is fairly traceable to the

6

challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). This three-part test represents the "irreducible constitutional minimum of standing," *id*. at 560, and federal courts "may not pronounce on 'questions of law arising outside' of such 'cases and controversies,'" *Virginia ex rel. Cuccinelli v. Sebelius*, 656 F.3d 253, 267 (4th Cir. 2011) (quoting *Arizona Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 133 (2011)). Accordingly, we must determine if the Providers have demonstrated that they may invoke the courts' jurisdiction.

Whether a plaintiff faces a credible threat of prosecution concerns the first prong ("injury in fact") of the *Lujan* test. To establish an "injury in fact," a plaintiff must demonstrate, among other things, "a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298 (1979). However, "'it is not necessary that [the plaintiff] first expose himself to actual arrest or prosecution to be entitled to challenge [the] statute that he claims deters the exercise of his constitutional rights.'" *Id.* (quoting *Steffel v. Thompson*, 415 U.S. 452, 459 (1974)) (alterations in original). "An allegation of future injury may suffice if the threatened injury is 'certainly impending,' or there is a 'substantial risk that the harm will occur.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013)). A plaintiff faces "a credible threat of future enforcement so long as the threat is not 'imaginary or wholly speculative,' *Babbitt*, 442 U.S. at 302, 'chimerical,' *Steffel*, 415 U.S. at 459, or 'wholly conjectural,' *Golden v. Zwickler*, 394 U.S. 103, 109 (1969)." *Kenny v. Wilson*, 885 F.3d 280, 288 (4th Cir. 2018).

7

With these principles in mind, we turn to the question of whether the Providers have established such a credible threat of prosecution.

## III.

## A.

In contending that the Providers lack standing, the State principally relies on North Carolina's historic non-enforcement of the challenged statutes, arguing that this demonstrates the unlikeliness that the statutes will be enforced against the Providers in the future. The parties agree that North Carolina has not enforced § 14-44 or § 14-45 against any abortion provider in nearly fifty years.

In *Poe v. Ullman*, the Supreme Court explained that persistent non-enforcement of a statute can "deprive[] [a] controvers[y] of the immediacy which is an indispensable condition of constitutional adjudication." 367 U.S. 497, 508 (1961). The *Poe* plaintiffs challenged a Connecticut ban on contraception that had been enforced only once in eighty-two years. *Id.* at 501–02. A plurality of the Court believed, particularly given the persistent and open violations of the ban, that this non-enforcement reduced the "dead words of the written text" to "harmless, empty shadows," and accordingly found no credible threat of future enforcement. *Id.* at 502, 508. Under similar circumstances, we have followed this approach. *See Doe v. Duling*, 782 F.2d 1202, 1204, 1206–07 (4th Cir. 1986) (threat of prosecution under Virginia cohabitation ban was "only the most theoretical" where violations were common and there were no recorded convictions in private homes in previous hundred years).

8

The State urges us to follow *Poe* here. However, doing so presents two difficulties. First, the district court found that in this case there is no evidence of "open and notorious" violations of the challenged statutes. *See* 363 F. Supp. 3d at 622–23. The State agrees that there is no evidence that the Providers have performed illegal abortions. Thus, unlike in *Poe* and *Duling*, we cannot assume the State's acquiescence in violations of the law. As we have previously explained, "[p]ublic policy should encourage a person aggrieved by laws he [or she] considers unconstitutional to seek a declaratory judgment against the arm of the state entrusted with the state's enforcement power, all the while complying with the challenged law, rather than to deliberately break the law and take his [or her] chances in the ensuing suit or prosecution." *Mobil Oil Corp. v. Att'y Gen. of Commonwealth of Va.*, 940 F.2d 73, 75 (4th Cir. 1991); *see also* 13B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3532.5 (3d ed. 1998) ("[C]itizens should be allowed to prefer official adjudication to private disobedience."). Establishing standing does not require that a litigant fly as a canary into a coal mine before she may enforce her rights.

Second, the 2015 amendments cast doubt on whether North Carolina is truly disinterested in enforcing its abortion laws. While *Poe* instructs courts to discount moth-eaten statutes, laws that are "recent and not moribund" typically do present a credible threat. *Doe v. Bolton*, 410 U.S. 179, 188 (1973); *Kenny*, 885 F.3d at 288. This is because a court presumes that a legislature enacts a statute with the intent that it be enforced. *Mobil Oil Corp.*, 940 F.2d at 76; *Doe*, 410 U.S. at 188.

So too with amendments. In *American Booksellers Association, Inc. v. Virginia*, we determined that plaintiffs had standing to challenge a Virginia statute prohibiting the

9

display of sexually explicit material to minors because "[i]t would be unreasonable to assume that the General Assembly adopted the 1985 amendment without intending that it be enforced." 802 F.2d 691, 694 n.4 (4th Cir. 1986), *vacated on other grounds*, 488 U.S. 905 (1988). On appeal, the Supreme Court agreed that the plaintiffs had standing to challenge the statute. *Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 393 (1988).[1]

This suit was brought shortly after the 2015 amendments went into effect. Those amendments modified North Carolina's abortion laws in a number of respects. *See* 2015 N.C. Sess. Laws 135. But the State urges us not to apply a presumption of a credible threat to these amendments because, it says, the amendments did not alter § 14-45.1(a), the twenty-week ban. And because the Providers assertedly challenged only the twenty-week ban, the State argues that the amendments to other aspects of North Carolina's statutory scheme regulating abortions are irrelevant. But the State's premise is incorrect — the Providers' complaint is clear that it challenges both the twenty-week ban in § 14-45.1(a) and the medical emergency exception in § 14-45.1(b), which everyone agrees was amended. And although the core of the twenty-week exception remained unchanged as a result of the 2015 amendments, the legislature did modify the text of the exception to require the procedure be performed by a "qualified" physician. 2015 N.C. Sess. Laws 143;

---

[1] In doing so, the Court noted that "[t]he State has not suggested that the newly enacted law will not be enforced, and we see no reason to assume otherwise." *Id.* We recognize that in the case at hand, two of the defendants have made informal statements indicating they have no present intent to enforce the challenged provisions; but those statements are not binding and the other defendants have made no representations at all as to their intent to enforce the challenged statutes. Accordingly, we hardly have reason to assume the State will not enforce the challenged statutes. *See infra* Part III. B.

10

*see* N.C. Gen. Stat. § 14-45.1(a).  It is difficult to explain why the legislature would have altered the text of the twenty-week ban if it did not expect for those words to ever be given effect.

Viewing the amendments in the context of the statutory scheme further indicates that North Carolina has a continued interest in enforcing the challenged statutes.  The amendments impose additional regulations on abortion providers by restricting who may perform abortions and what information providers must report to North Carolina; the amendments reduce the availability of abortion to women facing medical emergencies; and the amendments extend the mandated waiting period women must observe before obtaining an abortion.  These changes do not evince an "undeviating policy of nullification" by the State.  *Poe*, 367 U.S at 502.  Rather, the North Carolina legislature's recent revisions to its statutory scheme suggest that North Carolina has a renewed interest in regulating abortion.

And it is not alone.  Abortion access remains a subject of lively debate in this country:  two other states presently ban abortions after twenty weeks; more than a dozen states ban abortion at earlier dates; and nearly two dozen more states ban abortion at a later, but previability, date.  *See* Guttmacher Inst., *State Bans on Abortion Throughout Pregnancy*, https://www.guttmacher.org/state-policy/explore/state-policies-later-abortions (last accessed June 9, 2021).  In 2013, 2015, and 2017, a twenty-week ban was considered and passed in the U.S. House of Representatives.  H.R. 1797, 113th Cong. (2013-2014); H.R. 36, 115th Cong. (2015-2016); H.R. 36, 115th Cong. (2017-2018).

These bans are not "antique[s]." *Duling*, 782 F.2d at 1207.  At the time the Providers filed suit in November 2016, the political salience of the abortion debate was palpable.

11

*See, e.g.*, S.D. S.B. 72 (twenty-week ban proposed January 11, 2016, signed into law March 10, 2016); S.C. H.B. 3114 (twenty-week ban proposed January 13, 2015, signed into law May 31, 2016); Ohio S.B. 127 (twenty-week ban proposed March 16, 2015, signed into law December 13, 2016). The week after oral argument in this case, the Supreme Court granted *certiorari* to address the constitutionality of Mississippi's fifteen-week abortion ban. *Dobbs v. Jackson Women's Health Org.*, 945 F.3d 265 (5th Cir. 2019), *cert. granted*, No. 19-1392, 2021 WL 1951792 (U.S. May 17, 2021). And numerous other states have enacted previability bans in recent weeks. *See, e.g.*, Tex. S.B. 8 ("heartbeat" ban signed into law on May 19, 2021); Idaho H.B. 366 ("heartbeat" ban signed into law on April 27, 2021); Mont. H.B. 136 (20-week ban signed into law April 26, 2021); Okla. H.B. 2441 ("heartbeat" ban signed into law on April 26, 2021); Ark. S.B. 6 (near total ban signed into law March 9, 2021); *see also* S.61, 117th Cong. (2021–2022) (twenty-week ban introduced in the U.S. Senate January 27, 2021). North Carolina's neighbors are among the states currently litigating the constitutionality of abortion restrictions. *See, e.g.*, S.C. S.B. 1 ("heartbeat" ban signed into law on February 18, 2021; temporarily restrained February 19, 2021; preliminarily enjoined March 19, 2021, *Planned Parenthood of S. Atl. v. Wilson*, No. CV 3:21-00508-MGL, 2021 WL 1060123, at *2 (D.S.C. Mar. 19, 2021)); Tenn. Code Ann. § 39-15-202(a)–(h) (waiting period law, pending rehearing *en banc*, *Bristol Reg'l Women's Ctr., P.C. v. Slatery*, 993 F.3d 489 (6th Cir. Apr. 9, 2021)).

As a nation we remain deeply embroiled in debate over the legal status of abortion. While this conversation rages around us, this court cannot say that the threat of prosecution to abortion providers who violate the law is not credible.

Of course, the likelihood of future prosecution will always be difficult to predict. Even in *Poe*, where there was nearly a century of non-enforcement despite open violations of the law, the Supreme Court could only attempt to anticipate the likelihood of future prosecutions. Such endeavors are hardly foolproof. Four years after it issued *Poe*, the Court was confronted with the prosecutions of two doctors for selling contraceptives in violation of the very same statutory provisions it had understood to be interred. *Griswold v. Connecticut*, 381 U.S. 479 (1965). Here, where North Carolina's continued interest in regulating abortion remains vividly apparent — much more so than in *Poe* — we cannot dismiss the threat of prosecution as "not remotely possible." *Babbitt*, 442 U.S. at 299 (quoting *Younger v. Harris*, 401 U.S. 37, 42 (1971)).

B.

Informal statements by two of the defendants that they do not presently intend to enforce the challenged statutes do not alter our analysis. First, we note that two other defendants (Greene and Cohen, of the North Carolina Medical Board and the Department, respectively) have made no representations of their intent to enforce the challenged statutes. Furthermore, the nature and content of the statements that have been issued are insufficient to eliminate the threat of prosecution under the challenged statutes.

Defendant District Attorney Woodall sent the State's counsel in this case an e-mail stating that he has "no present intentions" of enforcing the challenged statutes in his prosecutorial district. Defendant District Attorney Deberry co-wrote an opinion piece for

13

the *Washington Post* advocating for prosecutors to use their discretion not to enforce laws restricting access to abortion. Satana Deberry, Stephanie Morales & Miriam Aroni Krinsky, Opinion: *We Are Prosecutors. We Will Use Our Discretion on New Antiabortion Laws*, Wash. Post (June 7, 2019), https://www.washingtonpost.com/opinions/2019/06/07/we-are-prosecutors-we-will-use-our-discretion-new-antiabortion-laws.[2]

Unofficial and non-binding statements such as these do not and "cannot override the plain text of the [statutes] when it comes to establishing a credible threat of enforcement." *EQT Prod. Co. v. Wender*, 870 F.3d 322, 331 (4th Cir. 2017); *see also Virginia Soc'y for Human Life, Inc. v. Fed. Election Comm'n*, 263 F.3d 379, 388 (4th Cir. 2001), *overruled on other grounds by The Real Truth About Abortion, Inc. v. Fed. Election Comm'n*, 681 F.3d 544 (4th Cir. 2012) (holding a formal policy of non-enforcement that "d[id] not carry the binding force of law" was insufficient to defeat standing). The Providers have "no guarantee that [prosecutors] might not tomorrow bring [their] interpretation more in line with the [statutes'] plain language." *N. Carolina Right to Life v. Bartlett, Inc.*, 168 F.3d 705, 711 (4th Cir. 1999). In the meantime, they "will suffer from the reasonable fear that [they] can and will be prosecuted." *Id.* Thus, the Providers have a right to insist that North Carolina comply with the Constitution — and so do their patients.

---

[2] The State cites this opinion piece in its brief, but it does not appear in the record, presumably because Defendant Deberry took office during the pendency of this lawsuit. We take judicial notice of the fact of the publication of the piece. Fed. R. Evid. 201.

IV.

Amidst a wave of similar state action across the country, North Carolina has enacted legislation to restrict the availability of abortions and impose heightened requirements on abortion providers and women seeking abortions. Given these facts, we cannot reasonably assume that the abortion ban that North Carolina keeps on its books is "largely symbolic." *Duling*, 782 F.2d at 1207. Accordingly, we agree with the district court that the Providers have established a credible threat of prosecution and therefore have standing to bring this suit. The judgment of the district court is thus

*AFFIRMED.*