# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 12, 2023

Lyle W. Cayce
Clerk

No. 23-50257

Stephen C. Lutostanski; Amanda Logan; Andria Dowie,

*Plaintiffs—Appellants*,

*versus*

Andrew Brown; Jeffrey W. Travillion, Sr.; Brigid Shea; Ann Howard; Margaret Gomez; Rebecca Guerrero,

*Defendants—Appellees*.

---

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:22-CV-1008

---

Before Clement, Engelhardt, and Oldham, *Circuit Judges*.

Andrew S. Oldham, *Circuit Judge*:

A group of *pro se* plaintiffs sued six Travis County, Texas officials over alleged improprieties related to the administration of elections. The district court dismissed the lawsuit for lack of standing, and the plaintiffs appealed. We agree with the district court that the plaintiffs lacked standing, but we hold that the proper remedy was remand, not dismissal.

No. 23-50257

## I.

On August 1, 2022, Stephen Lutostanski, Amanda Logan, Andria Dowie, and Christiana Keeler filed suit in Travis County district court. The plaintiffs, who are all Travis County voters, named four defendants: the current Travis County judge, a former county judge, the current county clerk, and a former county clerk. The plaintiffs made several allegations regarding the administration and validity of the November 2020 general election. As relevant here, the plaintiffs alleged that the defendants used an uncertified electronic voting system to conduct that election in Travis County and, in so doing, violated several state and federal laws. The plaintiffs sought injunctive and declaratory relief to prohibit electronic voting in Travis County, require paper ballots, and unseal various records related to the 2020 general election.

Eight days later, and before any of the named defendants were served, the plaintiffs filed an amended complaint. The amended complaint removed one plaintiff (Keeler) and two defendants (the former Travis County judge and clerk), and added four defendants (four current county commissioners), for a total of three plaintiffs and six defendants. The amended complaint was otherwise materially identical to the initial complaint.

The defendants removed the case to federal court, and moved to dismiss the lawsuit under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Finding that the plaintiffs lacked Article III standing, the district court dismissed the suit without prejudice. The plaintiffs timely appealed. Our review is *de novo. See T. B. ex rel. Bell v. Nw. Indep. Sch. Dist.*, 980 F.3d 1047, 1050 (5th Cir. 2020).

## II.

Article III of the United States Constitution limits the "judicial Power" to "Cases" and "Controversies." U.S. CONST. art. III, § 2, cl. 1.

Because of that limitation, any plaintiff invoking the "judicial Power" must establish the "irreducible constitutional minimum of standing." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "[A] plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (citing *Lujan*, 504 U.S. at 560–61).

Construed liberally, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), the plaintiffs allege two injuries: (A) their votes were "illegalized" by the defendants and not counted, and (B) their personal information was unlawfully disclosed. Neither injury is sufficient for Article III standing.

## A.

To begin, the plaintiffs allege that because the defendants used an uncertified or unaccredited voting system to conduct the November 2020 election, their votes were invalidated (or "illegalized") and not counted. *See* Blue Br. 13, 20. But this argument fails for two reasons.

First, the asserted injury is not concrete for purposes of Article III injury in fact. Concrete injuries include constitutional harms, traditional tangible harms such as "physical" and "monetary" harms, and "various intangible harms," including "injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *See TransUnion*, 141 S. Ct. at 2204 (citation omitted). In the context of the right to vote, courts have found standing when voters were "denied the right to cast a ballot" or when their votes were "mathematically diluted by the method of election." *See* Steven J. Mulroy, *Baby & Bathwater: Standing in Election Cases After 2020*, 126 Dick. L. Rev. 9, 35–36 (2021) (citing *Harper v. Va. Bd. of Elections*, 383 U.S. 663, 668–70 (1966), and *Baker*

No. 23-50257

*v. Carr*, 369 U.S. 186, 207–08 (1962)); *see also Gill v. Whitford*, 138 S. Ct. 1916, 1929–30 (2018).

Here, the plaintiffs seem to argue that their right to vote was denied because the Travis County officials' use of an uncertified voting system invalidated their votes. But plaintiffs' theory would apply equally to all voters in Travis County. And plaintiffs do not allege that Travis County's voting system somehow invalidated their votes while counting more than 600,000 others. *See Official Results: Summary Results Report Joint General and Special Election November 3, 2020*, Travis County Clerk (Nov. 12, 2020), https://perma.cc/D2NC-5A88 (noting 612,696 cast votes).

Perhaps realizing this problem, the plaintiffs switch arguments in their reply brief. Their alternative argument assumes that their votes were counted but alleges that defendants acted unlawfully in counting votes cast through the uncertified system. *See* Gray Br. 19 (discussing Tex. Elec. Code § 276.014). This alternative argument does not satisfy Article III's injury in fact requirement: "The only injury plaintiffs allege is that the law—specifically [Texas election law]—has not been followed. This injury is precisely the kind of undifferentiated, generalized grievance about the conduct of government that we have refused to countenance in the past." *See Lance v. Coffman*, 549 U.S. 437, 442 (2007).

Second, plaintiffs "invalidated votes" injury is not redressable. In their amended complaint, plaintiffs asked for injunctive and declaratory relief against the defendants' use of Travis County's uncertified voting system. But, as the plaintiffs acknowledged in the same document, the voting system in question was certified by the Texas Secretary of State on January 8, 2021. *See* ROA.597–98. Without a showing that the risk of similar future harm is "sufficiently imminent and substantial," *TransUnion*, 141 S. Ct. at 2210, a single instance of past harm cannot support a claim in federal court for

4

forward-looking injunctive relief. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 105, 111–12 (1983). And without an otherwise valid basis for federal jurisdiction, the plaintiffs' request for declaratory relief also fails. *See California v. Texas*, 141 S. Ct. 2104, 2115–16 (2021).

### B.

As a second theory of standing, the plaintiffs allege that the defendants' use of an uncertified voting system resulted in the unwanted disclosure of their personal information. But the plaintiffs are not consistent in describing this supposed injury: they allege that the defendants sold, Blue Br. 13, compromised, Blue Br. 15, or released, Blue Br. at 21–22, their personal information to "federal and third-party vendors," ROA.1579–80, or "other countries and third parties." Blue Br. 13. And plaintiffs do not explain what "personal information" is at issue, or why, how, when, or to whom it was unlawfully released (or sold or compromised). Such a "speculative" injury does not provide a basis for federal jurisdiction. *Cf. Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).

### III.

The plaintiffs argue that the district court should have remanded their lawsuit to state court instead of dismissing without prejudice.

We agree. The jurisdictional statute governing removal provides: "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case *shall* be remanded." 28 U.S.C. § 1447(c) (emphasis added). "The statute declares that, where subject matter jurisdiction is lacking, the removed case *shall* be remanded." *Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund*, 500 U.S. 72, 89 (1991) (emphasis in original) (citation and quotation marks omitted). "Moreover, § 1447(c)'s text includes no exceptions." *Spivey v. Chitimacha Tribe of La.*, 79 F.4th 444, 447 (5th Cir. 2023). In this case, the district court held (and we agree) that

the plaintiffs lacked Article III standing. A lack of standing is a lack of subject matter jurisdiction. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102–04 (1998). Under § 1447(c), the district court should have remanded the case to state court. *See Harrison v. Jefferson Par. Sch. Bd.*, 78 F.4th 765, 774–75 (5th Cir. 2023); *Spivey*, 79 F.4th at 447–49.

Now, the defendants appear to suggest that we should distinguish between the plaintiffs' federal and state law claims. The defendants contend that the district court had "original subject-matter jurisdiction" over the plaintiffs' federal claims and thus "could not remand those claims to state court." *Ibid.* (citing *Buchner v. F.D.I.C.*, 981 F.2d 816, 819–20 (5th Cir. 1993)). That is incorrect for four reasons.

First, § 1447(c) requires the court to remand the "case," not discrete claims. *Cf. Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 392 (1998) ("An ordinary reading of the language [of § 1447(c)] indicates that the statute refers to an instance in which a federal court 'lacks subject matter jurisdiction' over a 'case,' and not simply over one claim within a case.") (citation omitted); *see also* 14C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3739, 761–64 (Rev. 4th ed.). Our court has repeatedly instructed district courts to remand cases—even those that have state and federal claims—pursuant to § 1447(c). *See, e.g.*, *Spivey*, 79 F.4th at 445–46, 449; *Harrison*, 78 F.4th at 768, 774–75. And we see no reason to depart from that precedent here. The "case" that the defendants removed to the Western District of Texas contained federal and state law claims. If § 1447(c) mandates the remand of that "case," it mandates the remand of all of the claims in that case.

Second, the defendants misunderstand the nature of federal court jurisdiction. Yes, federal district courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

28 U.S.C. § 1331; *cf.* U.S. CONST, art. III, § 2, cl. 1. And the plaintiffs brought several federal-question claims. But compliance with § 1331 is necessary but not sufficient for federal subject matter jurisdiction. The plaintiffs must also show that they have Article III standing. *See Steel Co.*, 523 U.S. at 103–04. Because the plaintiffs lack standing, the district court lacks subject matter jurisdiction under § 1447(c) to do anything but remand the removed case (and with it, plaintiffs' federal claims).

Third, there is nothing special about the plaintiffs' federal law claims, such as they cannot be adjudicated in state court. With some exceptions not relevant here, state courts enjoy concurrent jurisdiction over federal claims. *See Tafflin v. Levitt*, 493 U.S. 455, 458 (1990) ("[W]e have consistently held that state courts have inherent authority, and are thus presumptively competent, to adjudicate claims arising under the laws of the United States."); *see also* THE FEDERALIST No. 82 (Alexander Hamilton). And because state courts are not bound by the standing requirements of Article III, *see ASARCO Inc. v. Kadish*, 490 U.S. 605, 617 (1989), they may entertain cases that cannot be brought in federal court. *See TransUnion*, 141 S. Ct. at 2224 n.9 (Thomas, J., dissenting).

Finally, defendants' litigation conduct reveals their misunderstanding about federal jurisdiction and our federal system. Plaintiffs sued in state court—a choice that (as far as we know) plaintiffs had every right to make. Defendants removed to federal court on the assurance that federal courts would have the jurisdiction defendants invoked. Then, having invoked federal jurisdiction, defendants turned around and sought a dismissal in federal court on the grounds that the plaintiffs lacked standing. That is not how the system works. Either the federal courts have subject matter jurisdiction, and the plaintiffs' claims can be adjudicated; or there is no federal jurisdiction, and the suit must be remanded to state court. Federal jurisdiction is not a game of whack-a-mole.

No. 23-50257

\*     \*     \*

The district court's order is VACATED, and the case is REMANDED with instructions to remand to state court.