# United States Court of Appeals for the Fifth Circuit

No. 25-20354

United States Court of Appeals
Fifth Circuit

**FILED**

December 11, 2025

Lyle W. Cayce
Clerk

Peng Wang,

*Plaintiff—Appellant*,

*versus*

Ken Paxton, *in his Official Capacity as Attorney General of Texas*,

*Defendant—Appellee*.

———————————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:25-CV-3103

———————————————————————

Before Wiener, Engelhardt, and Oldham, *Circuit Judges*.

Andrew S. Oldham, *Circuit Judge*:

Texas's Senate Bill 17 prohibits individuals domiciled in designated countries, including China, from acquiring various property interests in Texas. Plaintiff Peng Wang argues that law is unconstitutional. But Wang has lived in Texas for sixteen years, attends school in Texas, and intends to obtain a job and remain in Texas after graduation—so he is not domiciled in China. Thus, we affirm the district court's holding that Wang lacks standing to challenge Senate Bill 17.

No. 25-20354

I

A

Senate Bill 17 ("SB 17") regulates the acquisition of real estate in Texas by certain foreign individuals and entities from "designated countr[ies]." TEX. PROP. CODE § 5.251. Designated countries include those identified by the United States Director of National Intelligence as posing "a risk to the national security of the United States." *Id.* § 5.251(3)(A). That list includes China, Russia, Iran, and North Korea.

SB 17 then declares that certain individuals who are "domiciled in a designated country" "may not purchase or otherwise acquire an interest in real property" in Texas. *Id.* § 5.253. The statute also defines what it means for a person to be "domiciled": "[H]aving established a place as an individual's true, fixed, and permanent home and principal residence to which the individual intends to return whenever absent." *Id.* § 5.251(4). So, adding that all up, individuals who have a "true, fixed, and permanent home and principal residence" in a designated country to which they intend to return whenever absent cannot acquire various real estate interests in Texas.[1]

As to enforcement, SB 17 directs the Attorney General to "establish procedures to examine a purchase or acquisition of an interest in real property and determine whether an investigation of a possible violation of this subchapter is warranted." *Id.* § 5.255(a). Upon finding a violation of SB

---

[1] SB 17 also bans other classes of individuals and entities from purchasing property in Texas. *See* TEX. PROP. CODE §§ 5.253(1)–(3). It further proscribes certain citizens and political leaders of designated countries from purchasing property. *Id.* §§ 5.253(4)(B)–(E).

17, the Attorney General then "may refer the matter to the appropriate local, state, or federal law enforcement agency." *Id.* § 5.255(c)(2).

## B

Plaintiff Peng Wang is a Chinese citizen. But Wang has lived in Texas for the past sixteen years and currently holds an F-1 student visa. With that visa, Wang is pursuing a Master of Divinity in Fort Worth. He "expect[s] to graduate in late 2026 or early 2027" and then "hope[s] to work as a worship pastor at a local church." ROA.66. Wang also has "built" his "social network" in Texas and "plays instruments at several local orchestras as well as lead[s] Sunday worship service at a local church." ROA.66. He "wish[es] to continue renting an apartment in the greater Fort Worth-Dallas area to finish [his] degree and seek employment opportunities to become a pastor." ROA.67. As Wang put it, "I have always believed that the United States is the land of opportunity and equality, and everyone has a chance to realize the American Dream." ROA.68.

Wang, along with two other plaintiffs, sought a pre-enforcement injunction against all applications of the state law. The district court dismissed for lack of jurisdiction. The court found that the plaintiffs lacked standing because they weren't domiciled in China. The court based its conclusion on "the duration of [the plaintiffs'] continual residence in Texas and stated intention to remain here." ROA.266. The court also found that the plaintiffs did not face a substantial threat of future enforcement. The court reached this holding based on the Attorney General's repeated, in-court statements that SB 17 "does not" apply and "cannot be applied" to the plaintiffs. ROA.267.

No. 25-20354

Wang and a second plaintiff then sought an injunction pending appeal, which this court denied.[2] *See* ECF No. 44. That second plaintiff has since voluntarily dismissed her appeal. *See* ECF No. 59. Wang thus is the only remaining plaintiff.[3] Our review is de novo. *Lutostanski v. Brown*, 88 F.4th 582, 585 (5th Cir. 2023).

## II

To have standing to sue in federal court, a plaintiff must make three showings: that he has suffered an injury that is "concrete, particularized, and actual or imminent"; that the defendant likely caused the injury; and that judicial relief would likely redress the injury. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). Only the first requirement is at issue here.

For a pre-enforcement challenge, the Supreme Court has announced a three-part test to show an injury: that the plaintiff "inten[ds] to engage in a course of conduct arguably affected with a constitutional interest"; that his intended conduct is "arguably proscribed by the statute"; and that the threat of future enforcement of the statute against the plaintiff is "substantial." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 161, 162, 164 (2014) (quotations omitted). For each showing, a plaintiff must come forward "with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

We hold Wang lacks standing because he fails to allege an injury-in-fact. That's for two independent reasons. The first reason (A) is that SB 17

---

[2] The third plaintiff voluntarily dismissed her case because she "believed that assurances in the briefing of Defendant Ken Paxton established that she faced no threat of prosecution under" SB 17. ROA.227.

[3] Counsel for plaintiffs has nonetheless filed another lawsuit with three new plaintiffs challenging SB 17. *See Huang v. Paxton*, No. 1:25-cv-01509-ADA (W.D. Tex.). That litigation remains pending in the district court.

No. 25-20354

does not arguably proscribe Wang's conduct because he has failed to allege that he is domiciled in China. And the second reason (B) is that Wang has not alleged a substantial threat of future enforcement by the Attorney General.

### A

Wang is not domiciled in China. And his counterarguments are unpersuasive.

### 1

Start with SB 17's definition of "domiciled." Tex. Prop. Code § 5.251(4). Under the statute, a person is domiciled where he has "established a place as [his] true, fixed, and permanent home and principal residence to which [he] intends to return whenever absent." *Ibid.* Under this standard, Wang is not domiciled in China.

To begin, China is not Wang's permanent home: He has lived in Texas for sixteen years and intends to stay in Texas. Specifically, he hopes to "continue renting an apartment in the greater Fort Worth-Dallas area" and "seek employment opportunities to become a pastor." ROA.67. Thus, Wang does not "intend[] to return" to China after his current absence. *See* Tex. Prop. Code § 5.251(4). Indeed, Wang's pleadings lack any sort of affirmative statement whatsoever that he intends to return to China—at all, at any time in his life, ever. In fact, counsel at oral argument could not even provide a possible address anywhere in China at which Wang has ever lived or intends to live. *See* Oral Argument at 6:33–6:44. Without any affirmative intent to make China his fixed, permanent home, Wang has not alleged that he is domiciled there under the plain text of SB 17.

### 2

Wang's counterarguments do not change the analysis.

5

No. 25-20354

*First*, Wang cites his F-1 student visa and argues that his visa status prevents him from establishing a domicile in the United States. To obtain an F-1 visa, individuals must attest that they "intend" and are able to "depart [the United States] upon termination of student status." 22 C.F.R. § 41.61(b)(iv). Wang's argument, then, is that his visa requires him to leave the United States when it expires, so he can't be domiciled here.

That may be true, but it is irrelevant. SB 17 only applies to Wang if he is *domiciled in China*. That Wang's visa requires him to leave the United States upon expiration says nothing about his intentions to return to China. He may move to Bolivia. He may go to Botswana. He may travel to Berlin. But as Wang acknowledged in his motion for a preliminary injunction, he has "no real plans to return to China." ROA.85; *see also* Oral Argument at 7:40–7:53 (Wang's attorney having no response when asked about Wang's plans after his visa expires). So, all we are left with is Wang's allegation that, upon graduation, he plans to "continue renting an apartment in the greater Fort Worth-Dallas area" and "seek employment opportunities to become a pastor." ROA.67. That is not an intent to return to China.[4]

*Second*, Wang cites to other snippets of Texas law that purport to affect whether he is domiciled in China, including the Texas Education Code, Texas Administrative Code, and Texas Attorney General opinions from 1984 and 1985. But how other statutes have variously defined domicile is as relevant here as the price of tea in China. After all, "[i]n law as in life, . . . the

---

[4] One of our sister circuits recently found that a Chinese citizen who owned a home in Florida was "arguably domiciled" in China for the purposes of a Florida law similar to SB 17. *See Shen v. Comm'r, Fla. Dep't of Agric. & Consumer Servs.*, 158 F.4th 1227, 1246 (11th Cir. 2025). But that case is inapposite here. For one, Florida's law did not define domicile like Texas's does. *See id.* at 1242–43. What's more, the *Shen* plaintiff did "not express[] an intention to remain indefinitely in Florida." *Id.* at 1246. Thus, nothing in our analysis conflicts with *Shen*.

same words, placed in different contexts, sometimes mean different things." *Yates v. United States*, 574 U.S. 528, 537 (2015). SB 17 provides a clear definition of domicile—and Wang does not meet it.

What's more, even if these other sources were relevant, none of them help Wang's case. Wang cites a pair of 1980s Texas Attorney General opinions for the proposition that immigrants on F-1 visas cannot establish residency in Texas for tuition purposes. *See* Blue Br. at 18 (citing Tex. Att'y Gen. Op. No. JM-241 (1984) and Tex. Att'y Gen. Op. No. JM-309 (1985)). But what Wang's hypothetical tuition bill would have been in the 1980s has nothing to do with whether Wang is domiciled in China under the terms of SB 17. Further, the Texas statute that these opinions interpreted did not even use the word "domicile," let alone did they use the word "domicile" as it is used in SB 17. *See* Tex. Att'y Gen. Op. No. JM-241, at *1 (quoting Tex. Educ. Code § 54.057). And, in any event, the statute at issue in those opinions has since been repealed. *See* Act of May 25, 2005, 79th Leg., R.S., ch. 888, § 3, 2005 Tex. Gen. Laws 3000, 3001. So, what the Texas Attorney General said over four decades ago about a different question, with a different statute, and different text, cannot affect the plain meaning of domicile in SB 17.

*Third*, Wang contends that his interpretation of domicile is at least "arguable," so he has therefore suffered an injury. *See Driehaus*, 573 U.S. at 162. He also asks that this court certify the meaning of domicile under SB 17 to the Texas Supreme Court if we have any doubt. Both arguments fail for the same reason: Wang clearly is not domiciled in China. And Wang's argument does not meet the certification standard in any event. *See Stanford ex rel. Phillips v. Brandon Nursing & Rehab. Ctr., L.L.C.*, No. 24-60509, 2025 U.S. App. LEXIS 30403, at *49–50 (5th Cir. Nov. 20, 2025) (Oldham, J., dissenting).

In short, Wang is asking this court to find that his true, fixed, and permanent home and place to which he intends to return is an unknown place somewhere in China at which he has never lived and to which he has no intention to ever return. We refuse the invitation.

## B

Wang also lacks standing to bring this pre-enforcement challenge for another reason: He has not alleged a credible threat of enforcement of SB 17 against him. And his counterarguments are unpersuasive.

## 1

To show an injury in the pre-enforcement context, Wang must show that "the threat of future enforcement of [SB 17] is substantial." *Nat'l Press Photographers Ass'n v. McCraw*, 90 F.4th 770, 782 (5th Cir.), *cert. denied sub nom.*, *Nat'l Press Photographers Ass'n v. Higgins*, 145 S. Ct. 140 (2024) (quotation omitted). Here, Wang cannot make that showing because the Attorney General has repeatedly stated that SB 17 "does not" apply and "cannot be applied" to Wang. *See* ROA.262, 267; *see also* ROA.301–02, 334. By the Attorney General's own in-court admissions, Wang faces no threat of enforcement.

Wang also has not pointed to a single step that the Attorney General has taken to enforce SB 17, which went into effect on September 1, 2025. And before officials may enforce SB 17, the Attorney General must "establish procedures to examine a purchase or acquisition of an interest in real property and determine whether an investigation of a possible violation . . . is warranted." TEX. PROP. CODE § 5.255(a). So, given the Attorney General is himself in charge of setting procedures for potential prosecution and has maintained that the statute does not apply to Wang, there is no threat that anyone will enforce SB 17 against Wang.

8

No. 25-20354

Our credible-threat precedents are not to the contrary. For example, in *Institute for Free Speech v. Johnson*, the Texas Ethics Commission had issued an advisory opinion stating that the challenger's conduct fell within the "ambit" of the challenged law. 148 F.4th 318, 325 (5th Cir. 2025). And the Commission did not disavow potential enforcement in the litigation. *Id.* at 329. Or take *La Union Del Pueblo Entero v. Abbott*, 151 F.4th 273 (5th Cir. 2025). There, state witnesses testified that a challenged provision applied to services provided by the plaintiff. *Id.* at 289; *cf. Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 302 (1979) (allowing appellants to challenge statute because, among other reasons, "the State ha[d] not disavowed any intention of invoking the criminal penalty provision" against them).

Here, by contrast, the Attorney General has repeatedly disavowed applying the statute to Wang. And Wang cannot cite a single case where a court has found a credible threat of enforcement when the relevant official has expressly disavowed enforcement.

2

Rather, Wang argues that in any pre-enforcement challenge, courts may "assume" a credible threat of prosecution absent "contrary evidence." Blue Br. at 25 (quoting *Turtle Island Foods, S.P.C. v. Strain*, 65 F.4th 211, 218 (5th Cir. 2023)). But that is not the law.

Plaintiffs enjoy a presumption of enforcement only in the First Amendment context. On this point, our court has been explicit: "Unlike in other constitutional contexts, in the speech context, we may assume a substantial threat of future enforcement." *Nat'l Press*, 90 F.4th at 782 (quotation omitted); *see also Woodlands Pride, Inc. v. Paxton*, 157 F.4th 775, 786 (5th Cir. 2025) ("In pre-enforcement First Amendment challenges . . . we assume a credible threat of prosecution." (quotation

9

omitted)). Indeed, the very case that Wang relies on also declares that this presumption applies only to First Amendment challenges. *See Turtle Island*, 65 F.4th at 218 ("When we face a pre-enforcement challenge to recently enacted . . . statutes that facially restrict expressive activity," we "will assume a credible threat of prosecution in the absence of compelling contrary evidence." (quotation omitted)).

That this presumption is limited to the First Amendment is consistent with Supreme Court precedent. The Court told us that, in the context of the Free Speech Clause, "chilled speech or self-censorship is an injury sufficient to confer standing." *Barilla v. City of Houston*, 13 F.4th 427, 431 (5th Cir. 2021). And that chilling effect "may derive from the fact of the prosecution, unaffected by the prospects of its success or failure." *Dombrowski v. Pfister*, 380 U.S. 479, 487 (1965); *see also Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 393 (1988) (stating that, in the First Amendment context, "the alleged danger of [the] statute is, in large measure, one of self-censorship"). But the Supreme Court has never announced an equivalent chilling effect when plaintiffs allege that a statute violates the Equal Protection or Supremacy Clauses. Thus, an alleged First Amendment injury uniquely lends itself to the enforcement presumption under hoary Court precedent.

Wang next responds that the meaning of Article III's "Case or Controversy" requirement cannot change depending on the injury. But that is precisely how standing works. After all, standing "often turns on the nature and source of the claim asserted." *Warth v. Seldin*, 422 U.S. 490, 500 (1975). So, the fact that the required showing depends on the alleged injury is little surprise; the standard explicated in First Amendment cases simply does not apply here.

Finally, Wang argues that limiting the presumption of enforcement to the First Amendment context "will create a circuit split." Gray Br. at 21–22.

But the Fifth Circuit has already held as much, so holding in the Attorney General's favor breaks no new ground. *See Nat'l Press*, 90 F.4th at 782.

What's more, there is no split. Some circuits have said that "a court presumes that a legislature enacts a statute with the intent that it be enforced." *Bryant v. Woodall*, 1 F.4th 280, 286 (4th Cir. 2021), *as amended* (June 23, 2021). But even then, the *Bryant* court looked to the fact that no defendant had officially disavowed enforcement. *See id.* at 287 n.1, 288–89 (concluding that defendants' "[u]nofficial and non-binding statements" did not change the calculus, especially when two other defendants had "made no representations" at all). Here, by contrast, the Attorney General has made repeated in-court statements renouncing enforcement. Thus, declining to find a credible threat of enforcement here does not create a circuit split.

Wang next posits that other law enforcement officials could prosecute him. But Wang hasn't sued any of those officials, so this argument does not apply to the Attorney General.

As to possible enforcement by future attorneys general, the Attorney General is entitled to the presumption of good faith. The Attorney General has said that he will not prosecute Wang, and this court takes him at his word. *See Ross v. Reed*, 14 U.S. (1 Wheat.) 482, 486 (1816) ("It is a general principle to presume that public officers act correctly until the contrary be shown."); *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 325 (5th Cir. 2009) ("[G]overnment actors in their sovereign capacity and in the exercise of their official duties are accorded a presumption of good faith."); *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (declaring that the "presumption of regularity" applies absent "clear evidence to the contrary").

Wang's case cites are unavailing. True, the Court in *Stenberg v. Carhart* declined to accept the state attorney general's "narrowing interpretation" of a state statute. 530 U.S. 914, 940 (2000). But the Court

No. 25-20354

merely declined to give the attorney general's interpretation "controlling weight." *Ibid.* And the *Stenberg* Court made clear that "[r]egardless" of how much weight was given to the Attorney General's interpretation, his view "conflict[ed] with the statutory language." *Id.* at 942. Here, by contrast, the best reading of the definition of domicile accords with that of the Texas Attorney General, *and* the Attorney General has said he will not apply the statute against Wang.

Further, Wang cites to language in *FBI v. Fikre*. *See* Gray Br. at 16 (citing 601 U.S. 234, 241 (2024)). But that case was about how the government's voluntary cessation affected mootness. *Fikre*, 601 U.S. at 236. And in the mootness context, the government defendant has the burden to show the challenged conduct will not resume. *Id.* at 241. Here, however, the plaintiff must establish standing.

In sum, Wang cannot show a credible threat of enforcement and therefore lacks an injury.[5]

\*    \*    \*

"Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868). Therefore, we AFFIRM the district court's dismissal of this case.

_____

[5] Because we conclude that Wang has suffered no injury, we need not reach the Attorney General's arguments about traceability and sovereign immunity.